IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH L. RUSSELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 2:04-cv-1536 |
| | ) | |
| JO ANN  B. BARNHART, COMMISSIONER | ) | Judge Thomas M. Hardiman |
| OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

**I.    Introduction**

Plaintiff Kenneth L. Russell (Russell) brings this action pursuant to 42 U.S.C. §405(g)

and §1383(c)(3) of the Social Security Act (Act), seeking review of the final determination of the

Commissioner of Social Security (Commissioner) denying his application for disability insurance

benefits (DIB) and supplemental security income (SSI).  This matter is before the Court on the

parties' cross motions for summary judgment under Rule 56 of the Federal Rules of Civil

Procedure based on the record developed at the administrative proceedings.

After careful consideration of the Administrative Law Judge's (ALJ's) decision, the

memoranda of the parties and the entire record, the Court finds the ALJ's decision is supported

by substantial evidence.  Therefore, Plaintiff's motion for summary judgment will be denied and

the Commissioner's determination will be affirmed.

## II.     Procedural History

Plaintiff Russell initially applied for DIB and SSI on June 27, 2001, alleging an onset date

of May 4, 2001 because of leg and hip impairments. (R. 18, 84). By decision dated September

18, 2002, ALJ James Pileggi found Russell disabled for the closed period of May 4, 2001

through June 3, 2002. (R. 79-80).    Russell filed new claims on October 29, 2002 which were

closed as moot.

On August 27, 2003, the Appeals Council granted Plaintiff's request for review and

remanded the case. (R. 97-99). After the decision of the Appeals Council, ALJ Pileggi

conducted a new hearing on January 13, 2004 at which Russell was represented by counsel and

testimony was given by Russell and vocational expert Joseph J. Kuhar.  By decision dated May

10, 2004, ALJ Pileggi found that Russell was entitled to benefits for the same closed period as he

had determined previously.  On August 17, 2004, the Appeals Council denied Russell's request

for review, making the ALJ's opinion the final decision of the Commissioner. (R. 9-12).


## III.    Statement of Facts

Plaintiff Russell was 47 years old at the time of the ALJ hearing, making him a "younger"

individual under the regulations.  20 C.F.R. §§404.1563, 416.963.  He has an eighth grade

education and has prior work experience as a grill cook, chain hand, construction laborer (roofer)

and dairy farmer. (R. 55, 60).  Russell was working as a grill cook in May 2001, when he broke

his hip, and has not worked since that time. (R. 55-56).

On May 3, 2001, Russell presented at the emergency room with complaints of left hip and

femur pain which began when he slipped on wet grass. (R. 187).  The next day he was

2

transferred to Shadyside Hospital where Raj Sinha, M.D. performed a "revision of left hip bipolar hemiarthroplasty with open reduction and internal fixation of femoral shaft fraction." (R. 196, 202).

Dr. Sinha saw Russell on July 2, 2001 and indicated that he was able to bear weight on his hip and x-rays of his hip and pelvis demonstrated no complications from the operation of May 4, 2001. (R. 216, 269). Similarly, during an appointment on August 13, 2001, Russell advised that he was bearing weight on the hip with the assistance of crutches, although certain twists hurt him. (R. 211). As of September 11, 2001, physical therapy progress notes indicate that Russell was using a single crutch. (R. 304). Two days later, his therapist noted that Russell was sore because he was "shopping a lot yesterday." (R. 304).

On September 25, 2001, Russell's residual functional capacity (RFC) was assessed by a state agency medical consultant who determined that Russell could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for about six hours in an eight-hour workday, but his ability to push and/or pull was limited in the lower extremities. (R. 279-86). The state agency consultant also found that Russell could climb, stoop and crouch occasionally, but he could not balance, kneel or crawl. (R. 281).

A January 10, 2002 x-ray of Russell's left hip and pelvis was unchanged since August 13, 2001. (R. 365).

On June 4, 2002, Jerome Bonier, D.O., evaluated Russell after he presented with complaints of left femur, lumbar spine, and left thigh pain. (R. 368-69). Despite these complaints, Russell walked with a normal gait and was able to stand normally and on his heels and toes. (R. 369). He was in no acute distress. (R. 369). Russell's range of motion (ROM) in

3

the lumbar spine was 90 degrees (flexion) and 20 degrees (extension), and there was no sciatic notch tenderness. (R. 369). In addition, his ROM of the left hip was 100 degrees flexion, 30 degrees internal rotation, 45 degrees external rotation, 45 degrees abduction and 20 degrees adduction. (R. 369). In his RFC assessment, Dr. Bonier found that Russell could stand and/or walk two hours per eight-hour day, could sit without limitation, but could never climb, kneel, crouch, stoop, balance, or crawl. (R. 371).

On July 11, 2002, Russell presented in the emergency room with complaints of chest pain (R. 375). His ECG was normal (R. 380), and a cardiac stress test revealed that Russell "exercised for 7 minutes on a standard Bruce protocol to his maximum tolerated capacity," his maximum oxygen consumption was 7 METS,[1] and did not experience any chest discomfort with exercise or recovery. (R. 382). The study was negative for exercise-induced ischemia or angina. (R. 382, 384).

On December 12, 2002, Edward Smith, M.D., reported that he had seen Russell one time since May 2001, for an episode of atypical chest pain. (R. 410). Dr. Smith also noted that Russell underwent stress testing which was unremarkable and that he did not keep a follow-up appointment which he had scheduled. (R. 410).

On February 4, 2003, Russell presented to Shubhad Sawardekar, M.D., for a disability examination. (R. 411-14). At that time, Russell complained of left hip, left lower leg, and lower back pain. (R. 412). Although he claimed that he could not stand for more than fifteen to twenty

---

[1] The ability to exercise to 6-7 METS is consistent with the capacity to perform activities like shoveling 10 pound loads for 10 minutes at a time, splitting wood, shoveling snow, and walking at a pace of 5 miles per hour. American Heart Association, *Exercise Testing and Training of Individuals with Heart Disease or at High Risk for Its Development: A Handbook for Physicians* (1975).

minutes, he acknowledged that he could sit for up to six hours in a comfortable chair. (R. 411).

Dr. Sawardekar observed that Russell walked into the office slightly protecting his right lower

extremity but had no assistance (no walker or cane), and was able to get on and off of the

examining table without any discomfort. (R. 413). Dr. Sawardekar also observed that Russell

sat in his office for thirty to thirty-five minutes in the same chair without wiggling, standing or

complaining. (R. 413). Russell told Dr. Sawardekar that he has "no problem" sitting for four to

six hours in a soft chair with support. (R. 413). Dr. Sawardeker's testing also revealed that

Russell had normal ROM in all joints (R. 417-18), except for a slight decrease in forward

flexion of the hip on the left. (R. 418). Dr. Sawardeker's diagnostic impressions were: (1)

normal physical examination, (2) status post total hip replacement x2, and (3) tobacco abuse.

(R. 414).

On February 4, 2003, Dr. Sawardekar also performed a functional capacity assessment

(R. 415-16), which revealed that Russell could stand and walk for two to three hours in an eight-

hour day, and sit for up to six hours with a comfortable chair. (R. 415). Dr. Sawardekar also

found that Russell could push and pull without limitation, and bend, kneel, stoop, crouch and

balance frequently. (R. 415-16).

On February 20, 2003, Michael Niemiec, D.O., a state agency medical consultant,

performed a RFC assessment of Russell, which revealed that he could lift and/or carry twenty

pounds occasionally and ten pounds frequently, stand and/or walk for at least two hours in an

eight-hour workday, sit for a total of about six hours in an eight-hour workday, and push and/or

pull without limitation. (R. 420). Dr. Niemiec also found that Russell could climb, balance,

stoop, kneel, crouch and crawl occasionally. (R. 421).

On December 18, 2003, Dr. Bonier evaluated Russell for a second time. (R. 430-31). Dr. Bonier noted that Russell had not had any change in his pain complaints since his evaluation of June 4, 2002, and that he was "not complaining a great deal of left hip pain." (R. 430). Although Russell complained of constant pain in the lumbar spine, he had not had any lumbar spine studies as Dr. Bonier had recommended. (R. 430). Although Russell claimed that his pain increased with any activity, he reported that he could walk for one-eighth of a mile. (R. 430). Russell also claimed that he had difficulty sitting in a chair after approximately one-half hour. (R. 430).

Dr. Bonier noted that Russell walked with a normal gait and stood with a normal station, and could stand on his heels and toes without difficulty. (R. 430). There was no sciatic notch tenderness; a sitting root test was negative bilaterally; and motor strength was 5/5 bilaterally in the quadriceps, hamstring, gastroscoleous, tibilias anterior and entensor hallucis longus. (R. 431). Dr. Bonier concluded that Russell was not having any problems with this left hip and opined that Russell should have a more adequate work up of the lumbar spine but that surgical intervention was not necessary. (R. 431). In his RFC analysis, Dr. Bonier found that Russell could stand and/or walk for two hours, but could sit for only four hours. (R. 432).

At the administrative hearing, vocational expert Joseph Kuhar testified. (R. 61-62). The ALJ asked the VE whether there exists in the national economy sedentary work that would not require repetitive operation of foot controls. (R. 61). The ALJ stated that there were hundreds of thousands of jobs available to such an individual, including assembler (electronics industry) (240,000 jobs nationally), routing clerk (120,000 jobs nationally), and sorter (food industry) (260,000 jobs nationally). (R. 62). All of the foregoing jobs permit a sit/stand option. (R. 62).

## IV.   Standards of Review

Judicial review of the Commissioner's final decision on disability claims is provided by

42 U.S.C. §§ 405(g)[2] and 1383(c)(3).[3] Section 405(g) permits a district court to review

transcripts and records upon which a determination of the Commissioner is based.  Because the

standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding DIB), and judicial review

thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f,

regarding Supplemental Security Income, or "SSI"), disability decisions rendered under Title II

are pertinent to those rendered under Title XVI. *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3

(1990).

If supported by substantial evidence, the Commissioner's factual findings must be

accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v.

Secretary of HHS,* 722 F.2d 1150, 1152 (3d Cir. 1983).  The district court's function is to

determine whether the record, *as a whole*, contains substantial evidence to support the

Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994), *citing

Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Supreme Court has explained that

"substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate

---

[2] Section 405(g) provides in pertinent part:
> Any individual, after any final decision of the [Commissioner] made after a hearing to which he
> was a party, irrespective of the amount in controversy, may obtain a review of such decision by a
> civil action . . . brought in the district court of the United States for the judicial district in which the
> plaintiff resides, or has his principal place of business . . . .

42 U.S.C. §405(g).

[3] Section 1383(c)(3) provides in pertinent part:
> The final determination of the Commissioner of Social Security after a hearing under paragraph (1)
> shall be subject to judicial review as provided in section 405(g) of this title to the same extent as
> the Commissioner's final determinations under section 405 of this title.

42 U.S.C. §1383(c)(3).

to support a conclusion." *Richardson,* 402 U.S. at 401 (citation omitted). *See Ventura*, 55 F.3d at 901 *quoting Richardson*; *Stunkard v. Secretary of the Dep't of Health and Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). The United States Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *Stewart v. Secretary of HEW,* 714 F.2d 287, 290 (3d Cir. 1983).

In making this determination, the district court considers and reviews only those findings upon which the ALJ based the decision, and cannot rectify errors, omissions or gaps therein by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini,* 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' *Id.* at 87"; parallel and other citations omitted).

8

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support the ultimate findings. *Stewart*, 714 F.2d at 290.  In making a determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain the reasons for rejecting such supporting evidence, especially when testimony of the claimant's treating physician is rejected. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).  Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician: "an ALJ is not free to set her own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports" and other objective medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

To demonstrate disability under Title II or Title XVI of the Act, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1); 42 U.S.C. § 1383c(a)(3)(A).  When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner applies a five-step analysis. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The United States Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999) as follows:

9

In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied . . . . In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.

In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work . . . .

If the claimant is unable to resume her former occupation, the evaluation moves to the final *step [five]*. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step . . . .

*Plummer*, 186 F.3d at 428 (emphasis added; certain citations omitted).

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

10

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where the claimant is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461, *citing* 42 U.S.C. § 423 (d)(2)(A).  In order to prove disability under this second method, claimant first must demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4).  *Stunkard,* 841 F.2d at 59; *Kangas*, 823 F.2d at 777.  Once it is shown that claimant is unable to resume previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy.  *Campbell*, 461 U.S. at 461; *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777; *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986); *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir. 1979).

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the '[Commissioner] shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923.

Section 404.1523, Multiple impairments, provides:

11

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Thus, when a claimant presents more than one impairment, "the combined effect of the impairment must be considered before the [Commissioner] denies the payment of disability benefits." *Bittel,* 441 F.2d at 1195. Even if a claimant's impairment does not meet the criteria specified in the listings, he must be found disabled if his condition is *equivalent* to a listed impairment. 20 C.F.R. § 404.1520(d) (2002). To that end, the ALJ may not just make conclusory statements that the impairments do not equal a Listed Impairment in combination or alone, but rather, is required to set forth the reasons for the decision, and specifically explain why a claimant's impairments did not, alone or in combination, equal in severity one of the Listed Impairments. *Fargnoli,* 247 F.3d at 40 n. 4, *citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as to whether the claimant is unable to return to past employment or perform substantial gainful activities, it is incumbent upon the ALJ to "secure whatever evidence [believed necessary] to make a sound determination." *Ferguson*, 765 F.2d at 36.

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g., Carter v. Railroad Retirement Board,* 834 F.2d 62, 65 (3d Cir. 1987), *relying on Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403,

409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), *relying on Dobrowolsky.* When a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This evaluation obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c) (2002). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in the decision. *See Cotter*, 642 F.2d at 705. The United States Court of Appeals for the Third Circuit has stated: "[I]n all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations.  The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433, *quoting* Social Security Ruling ("SSR") 95-5p.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195. Although "there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." *Green,* 749

13

F.2d at 1070-71, *quoted in Mason,* 994 F.2d at 1067. Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain without contrary medical evidence. *Ferguson,* 765 F.2d at 37; *Chrupcala v. Heckler,* 829 F.2d 1269, 1275-76 (3d Cir. 1987). "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence. Instead, the Secretary must present *evidence to refute the claim. See Smith v. Califano,* 637 F.2d 968, 972 (3d Cir. 1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)."

## V.     Analysis

### A.     Medical Opinions of Treating Sources

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer,* 186 F.3d at 429 (*quoting Rocco v. Heckler,* 826 F.2d 1348, 1350 (3d Cir.1987)) . . . ." *Morales v. Apfel,* 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can choose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id*. at 317, *quoting Plummer,* 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory, medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales,* 225 F.3d at 317-318 (citations omitted).

14

Moreover, the Commissioner/ALJ "must 'explicitly' weigh all relevant, probative and available evidence . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition . . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects." *Adorno*, 40 F.3d at 48 (citations omitted). *See also Fargnoli*, 247 F.3d at 42-43 (when the ALJ failed to mention significant contradictory evidence or findings, Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit . . . .").

However, a medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527 (1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (i) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for

15

the Commissioner, such as "disabled" or "unable to work," on the other.  The latter type of

medical opinions are on matters which require dispositive administrative findings that would

direct a determination of disability.  *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration

and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical

opinions on matters reserved for the Commissioner).

      The regulations state that the SSA will "always consider medical opinions in your case

record," and state the circumstances in which an opinion of a treating source is entitled to

"controlling weight."  20 C.F.R. §404.1527(b), (d) (2002).[4]  Medical opinions on matters

reserved for the Commissioner are not entitled to "any special significance," although they

always must be considered.  20 C.F.R. §404.1527(e)(1-2) (2002).  The Commissioner's Social

Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI:  Giving

Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation

Ruling, Titles II and XVI:  Medical Source Opinions on Issues Reserved to the Commissioner,"

---

[4] Subsection (d) states: "How we weigh medical opinions.  Regardless of its source, we will evaluate every medical opinion we receive.  Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion."  20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the treatment relationship," and states:

    Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.  If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, *we will give it controlling weight*. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in  paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion.  *We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.*

20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner,[5] these Social Security Rulings require that, because an adjudicator is required to evaluate all evidence in the record that may bear on the determination or decision of disability, "adjudicators must always carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must never be ignored . . . ." SSR 96-5p, Policy Interpretation. Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Id.*

Finally, a medical opinion is not entitled to controlling weight if it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . . ." 20 C.F.R. § 404.1527 (d)(2). *See* note 3, *supra*. Where an opinion by a medical source is not entitled to controlling weight, the following

---

[5] SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to past relevant work, and whether an individual is "disabled" under the Act.

factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. §404.1527 (d)(1-6).

      B.     State Agency Consultants

Medical consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical . . . consultants or other program physicians . . . as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. §404.1527 (f)(2)(i). *See also* SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

      C.     Application

Plaintiff makes three principal arguments in his concise brief. First, Russell claims that the ALJ erred by not crediting his testimony regarding the limitations on his daily activities and making an adverse credibility determination in that regard. Second, Russell claims that the ALJ erred when he failed to credit Dr. Bonier's finding that Russell could sit for no more than four hours in an eight-hour workday. Finally, Russell argues that because the ALJ had previously

found him disabled for a closed period, he was entitled to a presumption of disability that the Commissioner failed to rebut.

Considering the last argument first, Russell claims: "A prior finding of disability raises a presumption of continuing disability and cessation of benefits must be based on substantial evidence of medical improvement permitting performance of substantial gainful activity." Pl. Br. at 7. In support of this argument, Russell cites *Musgrove v. Schweiker,* 552 F. Supp. 104 (E.D. Pa. 1982) and *Chrupcala,* 829 F.2d 1269 (3d Cir. 1987) without citing the pages in those decisions that support his argument.

The Commissioner counters that in 1984 Congress modified the disability provisions of the Social Security Act in a way that makes clear that there is no presumption of continuing disability. Def. Br. at 13-14. In support of her argument, the Commissioner cites the statute as modified in 1984, which provides:

> Any determination under this section shall be made on the basis of all the evidence available in the individual's case file, including new evidence concerning the individual's prior or current condition which is presented by the individual or secured by the Commissioner of Social Security. Any determination made under this section shall be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, *without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled.*

42 U.S.C. §423(f) (emphasis added). Accordingly, Russell's argument that the ALJ erred by failing to acknowledge a presumption of continuing disability is specious. Nevertheless, as the Commissioner acknowledges, section 423(f) does require that termination of disability benefits be based on substantial evidence of medical improvement.

Regarding the substantial evidence standard, Russell claims the ALJ erred by not crediting his testimony about the limitations on his daily activities and finding that he was not credible in certain respects. In this regard, Russell claims that the following testimony at the hearing before the ALJ demonstrated the severity of his conditions and the effects upon his activities of daily living and work-related functions:

> he broke his hip in August 2000, has cramps and muscle spasms in his left leg and cannot bend very far or stretch hardly at all, has pain and stiffness in his leg and lumbar region of his back; that he can only sit for 20 minutes to half an hour after which his leg will either go numb or go into spasms; that he can stand for only 10 to 15 minutes and can sit and stand for three or four hours after which he must lie down; that he lies down to relieve pain two to three times per day for a half hour to one hour at a time; if he can not lie down as indicated, he gets sick to his stomach, his pain and stiffness increase greatly, and if he does not lie down for a whole day, he spends the next couple of days in bed confined to his home; that he has difficulty sleeping and as a result takes naps every day for two hours; that he again broke his hip in May 2001; that he is unable to play his guitar for more than 20 minutes and has difficulty sitting long enough to watch a movie; that he enjoyed working and would rather be working if he could.

Pl. Br. at 4-5 (citations omitted). In light of the foregoing, Russell's attorney asked the VE whether a person of Russell's age, educational background, and work experience who had to lie down two or three times per day for as long as two hours at a time could sustain substantial gainful work activity, even if the person could perform a sit/stand option for three to four hours. The VE noted that such an individual could not work because a break during the first four hours of work would last no longer than twenty minutes. (R. 63).

The Commissioner counters that substantial evidence exists to support the ALJ's finding that Russell's subjective symptoms were not entirely credible. The Commissioner correctly notes that the ALJ must determine whether a claimant has a medically determinable impairment that could reasonably cause the symptoms alleged and then must "determine the extent to which

a claimant is accurately stating the degree of pain [or other symptoms] or the extent to which he or she is disabled by it." 20 C.F.R. §§404.1529, 416.929 (2004). Plaintiff's allegations of pain and other subjective symptoms must be supported by medical evidence, however. *Hartranft,* 181 F.3d at 362.

In evaluating Russell's subjective complaints, the ALJ noted that they were: (1) unsupported by the opinions of examining and treating physicians, including Dr. Sawardekar and Dr. Smith (R. 24-26); (2) unsupported by the opinion of the state agency medical consultant (R. 25); (3) inconsistent with his reported activities of light housework, playing the guitar, and playing cards twice weekly (R. 21, 174, 176); and (4) inconsistent with the fact that Russell took no pain medication and sought limited treatment. (R. 21).

The law is clear that the ALJ is obliged to determine the credibility of the claimant's alleged limitations. *Van Horn v. Schweiker,* 717 F.2d 871, 873 (3d Cir. 1983). "Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler,* 739 F.2d 987, 989-90 (4th Cir. 1984). Moreover, the ALJ may discount subjective complaints of pain if the claimant's testimony is inconsistent or the record as a whole includes inconsistencies. *Wilson v. Apfel,* 1999 WL 993723 (E.D. Pa. 1999), *aff'd,* 225 F.3d 651 (3d Cir. 2000). Applying the controlling law to the facts of record noted in the previous paragraph, the ALJ properly evaluated Russell's RFC and did not err when he failed to adopt the hypothetical questions posed by Russell's counsel because their key predicate facts were properly rejected by the ALJ.

Russell's final argument is that the ALJ erred when he failed to accept Dr. Bonier's conclusion after a December 18, 2003 examination of Russell that he could only stand/walk for

21

two hours and sit for only four hours in an eight-hour workday. Pl. Br. at 6. If the ALJ had credited this testimony of Dr. Bonier, it necessarily follows that his holding that Russell could perform a full range of sedentary work would have been erroneous. Thus, the pivotal question is whether substantial evidence exists to support the ALJ's rejection of Dr. Bonier's finding that Russell could sit no more than four hours in an eight-hour workday.

In his decision, the ALJ correctly noted that Dr. Bonier performed consultative examinations of Russell on June 4, 2002 and December 18, 2003. (R. 25). ALJ Pileggi then thoroughly analyzed both of Dr. Bonier's reports, noting that the clinical findings did not change significantly and even showed improvement in some respects during the intervening eighteen months. (R. 25, 368-69, 430-31). Likewise, Russell reported to Dr. Bonier in December 2003 that he had no change in his pain levels since his June 2002 consultation and Dr. Bonier's physical examination was consistent with the prior examination which resulted in a determination that Russell could sit for six hours. (R. 371, 430-31). Based on these internal inconsistencies, the ALJ did not err in rejecting Dr. Bonier's finding that Russell could sit for no more than four hours in an eight-hour workday.

Apart from the internal inconsistencies in Dr. Bonier's conclusions regarding Russell's ability to sit during an eight-hour workday, other substantial evidence of record supports the ALJ's conclusion as well. First, Dr. Sawardekar found that Russell could sit for up to six hours in an eight-hour workday, lift and carry up to twenty-five pounds, and his overall examination was "normal." (R. 26, 414-16). Second, the State agency medical consultant, Dr. Niemiec, opined that Russell could perform the exertional demands of light work, reduced by his ability to perform all postural activities only occasionally. (R. 25, 420-21). Finally, Russell's treating

22

general practitioner, Dr. Smith, indicated in a December 12, 2002 report that Russell visited him only once since his hip surgery and the reason for the visit was an atypical episode of chest pain in July 2002. (R. 24, 410). Dr. Smith advised Russell to return for a follow-up visit in 2-3 weeks, but Russell never did so. (R. 410). These facts buttress further the ALJ's decision.

In sum, when the two consultative examinations of Dr. Bonier are considered *in toto*, along with the medical records and opinions of Drs. Sawardekar, Niemec, and Smith, substantial evidence in the record exists to support the ALJ's rejection of Dr. Bonier's December 2003 conclusion that Russell could not sit for more than four hours in an eight-hour workday. Having properly determined that Russell could sit for six hours, it necessarily follows that the ALJ did not err in concluding that Russell was capable of performing sedentary work. Therefore, the Court will not disturb the ALJ's conclusion that Russell's "hip and leg impairments medically and functionally improved as of June 4, 2002." (R. 25).

## VI.    Conclusion

The Court has reviewed the ALJ's findings of fact and decision and determines that his ruling is supported by substantial evidence. Accordingly, the Court will deny plaintiff's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the decision below.

An appropriate order follows.

January 10, 2006

*Thos M. Hardiman*

Thomas M. Hardiman
United States District Judge